JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Matthew R. Stedman, pro se, appeals from the judgment of the Common Pleas Court dismissing his petition for postconviction relief without a hearing. For the reasons that follow, we affirm.
 {¶ 2} The facts of the underlying case were set forth inState v. Stedman (Nov. 1, 2001), Cuyahoga App. No. 77334, in which we stated:
 {¶ 3} "At approximately one o'clock in the morning of February 5, 1994, on East 83rd Street in Cleveland, Shareece Scott, an alleged prostitute, was shot in the face and killed as she leaned into the passenger side window of a small grey car which had pulled to the curb. Her last words, "What's up, baby?", preceded the fatal gunshot. The murder remained unsolved for more than two years.
 {¶ 4} "In June 1995, Stedman fled when ATF agents arrived at his home to question him on unrelated charges in connection with [the] manufacturing of automatic weapons. At that time, Stedman and Ciobotaru also had been indicted for a separate arson charge.
 {¶ 5} "In November 1996, Alcohol, Tobacco, and Firearms (ATF) agents arrested Andrew Starr in connection with unrelated federal weapons charges. In exchange for leniency in his case, Starr told federal agents that Matthew Stedman had killed Scott, and he agreed to testify against Stedman at trial. In addition, Starr provided investigators with the names George C. Ciobotaru and James `JJ' Potasiewicz, whom he said would corroborate his statement. When questioned, Potasiewicz revealed that he was with Stedman at the time of the shooting, and he saw Stedman shoot Scott; separately, Ciobotaru told authorities that Stedman admitted shooting Scott.
 {¶ 6} "On December 10, 1996, the grand jury indicted Potasiewicz and Stedman for the aggravated murder of Scott. The prosecutor nolled the charges against Potzsiewicz shortly thereafter, based on his agreement to testify against Stedman.
 {¶ 7} "In June of 1999, members of the Federal Bureau of Investigation and the Cleveland Homicide Unit located Stedman in Bangkok, Thailand, where he had been living for four years as Duncan Allen Robert Smith. They then extradited him back to the United States to stand trial for Scott's murder."
 {¶ 8} Stedman was convicted of aggravated murder and the court imposed a life sentence. The conviction was affirmed on appeal. Stedman, supra.
 {¶ 9} Stedman subsequently filed a petition for postconviction relief, which the trial court dismissed without a hearing. This appeal followed.
 TIMELINESS OF STEDMAN'S PETITION {¶ 10} Stedman filed his petition for postconviction relief on November 21, 2000. In its findings of fact and conclusions of law, the trial court found that Stedman's petition was untimely filed. In his first assignment of error, Stedman contends that the trial court erred in dismissing his petition as untimely.
 {¶ 11} R.C. 2953.21, which governs petitions for postconviction relief, provides that "a petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction * * *." (Emphasis added.)
 {¶ 12} Here, the record reflects that Stedman filed his notice of appeal of his conviction in the court of appeals on January 5, 2000 and filed the trial transcript on May 26, 2000. Accordingly, his petition for postconviction relief, which was filed on November 21, 2000, was timely.
 {¶ 13} Significantly, although Stedman's petition was timely, neither the State's response to his petition nor the trial court's decision regarding his petition were timely. R.C.2953.21(D) requires that if the State responds to a petition for postconviction relief, it must do so within ten days after the petition is filed or obtain leave of court to respond after that time. State v. Slagter (Oct. 18, 2001), Cuyahoga App. No. 78658, citing State v. Wiles (1998), 126 Ohio App.3d 71, 77. Here, the State filed its motion to dismiss Stedman's petition on December 26, 2000, well after the ten-day response time. It did not obtain any leave of court to file its response out of rule. Accordingly, the State's response was untimely and the trial court erred in considering it.
 {¶ 14} Likewise, the trial court's ruling regarding Stedman's petition was clearly untimely. The trial court filed its findings of fact and conclusions of law regarding the petition on September 15, 2003, nearly three years after the petition was filed, and then only after Stedman filed a motion to compel a ruling. Such delay is unconscionable.
 {¶ 15} Because Stedman's petition was timely filed, the trial court erred in dismissing it on the basis that it was untimely filed. However, as discussed below, because Stedman's petition failed to raise a genuine issue of material fact that there are substantive constitutional grounds for relief, the trial court properly dismissed the petition without a hearing and, therefore, the trial court's error was harmless.
 {¶ 16} Appellant's first assignment of error is sustained.
 RES JUDICATA {¶ 17} Under the doctrine of res judicata, constitutional issues cannot be considered in postconviction proceedings brought pursuant to R.C. 2953.21 where they have already or could have been fully litigated by the defendant, either before his judgment of conviction or on direct appeal from that judgment. State v.Perry (1967), 10 Ohio St.2d 175, paragraph seven of the syllabus; State v. McCullough (1992), 78 Ohio App.3d 587, 591. Issues properly raised in a petition for postconviction relief are those which could not have been raised on direct appeal because the evidence supporting such issues is outside the record. State v. Milanovich (1975), 42 Ohio St.2d 46, 50;State v. Durr (July 28, 1994), Cuyahoga App. No. 65958. If an issue has, or should have been, raised on direct appeal, the trial court may dismiss the petition on the basis of res judicata. State v. Spisak (Apr. 13, 1995), Cuyahoga App. No. 67229.
 {¶ 18} Stedman asserted three grounds for relief in his petition: 1) defense counsel was ineffective for failing to consult with a forensic expert or have such an expert testify at trial; 2) defense counsel was ineffective because he denied Stedman his right to testify in his own defense; and 3) defense counsel was ineffective because he failed to interview a witness, adequately investigate the case and obtain crucial documents. The trial court ruled that all three claims were barred by res judicata.
 {¶ 19} In his second assignment of error, Stedman contends that the trial court erred in ruling that his claim that defense counsel was ineffective for failing to consult with a forensics expert was barred by res judicata.[1] In his third and fourth assignments of error, Stedman contends that his trial counsel was ineffective for failing to consult with a forensics expert and, therefore, the trial court erred in dismissing his petition without a hearing on this issue. We consider these assignments of error together because they are related.
 {¶ 20} Initially, we note that Stedman raised the same alleged error regarding his counsel's failure to consult with a forensics expert in his direct appeal. This court overruled this assignment of error, however, stating:
 {¶ 21} "Stedman also contends that he received ineffective assistance of counsel because his trial counsel failed to employ a forensics expert, which, he believes, would have offered testimony contradicting the State's evidence that Scott had been shot at close range, thus pointing to his innocence.
 {¶ 22} "Stedman's claim that the utilization of an expert would have exonerated him is speculation only, since the record does not reveal the kind of testimony an expert could have offered on his behalf. Because Stedman cannot demonstrate prejudice from his counsel's failure to employ an expert, his claim of ineffective assistance of counsel cannot stand"Stedman, supra.
 {¶ 23} It is apparent from this ruling that because the evidence to support Stedman's claim was not in the trial record, the only proper avenue in which to address the claim was a petition for postconviction relief. Indeed, as the dissent inStedman noted with respect to this assignment of error, "The majority decision overruling this assignment is based upon review of the existing trial record, and does not necessarily prevent postconviction claims." Stedman, supra (Kilbane, J., dissenting). Accordingly, Stedman's claim was not barred by res judicata.
 {¶ 24} Nevertheless, it is well settled that a hearing is not automatically required whenever a petition for postconviction relief is filed. State ex rel. Jackson v. McMonagle (1993),67 Ohio St.3d 450; State v. Strutton (1988), 62 Ohio App.3d 248, paragraph one of the syllabus. The pivotal concern is whether there are substantive constitutional grounds for relief which would warrant a hearing based upon the petition, the supporting affidavits and materials, and the files and record of the cause.State v. Jackson (1980), 64 Ohio St.2d 107, 110; Strutton,
supra. A petitioner is entitled to postconviction relief under R.C. 2953.21 only if the court can find that there was such a denial or infringement of the petitioner's rights as to render the judgment void or voidable under the Ohio or United States Constitutions. State v. Perry (1967), 10 Ohio St.2d 175, paragraph four of the syllabus. Where a petition for postconviction relief fails to allege facts which, if proved, would entitle the petitioner to relief, the trial court may so find and summarily dismiss the petition. Perry, supra, paragraph two of the syllabus.
 {¶ 25} When a defendant asserts a claim of ineffective assistance of counsel in a petition for postconviction relief, the defendant bears the initial burden of submitting evidentiary documents containing sufficient operative facts to demonstrate his counsel's ineffectiveness and the fact that he was prejudiced thereby. State v. Jackson (1980), 64 Ohio St.2d 107, syllabus. If a petitioner fails to meet this burden, the trial court may dismiss the petition for postconviction relief without a hearing.State v. Jackson (1980), 64 Ohio St.2d 107.
 {¶ 26} In support of his claim that counsel was ineffective for not conferring with a forensics expert, Stedman appended the following evidence to his petition: 1) James Potasiewicz's police statement; 2) his own affidavit; 3) the affidavit of his parents, Daniel and Mary Ann Stedman; and 4) the affidavit of Barbi Smith, whose relationship to Stedman is not identified.
 {¶ 27} None of this evidence, however, is sufficient to demonstrate defense counsel's ineffectiveness. First, Patasiewicz's police statement is clearly not new evidence; it was available to Stedman at the time of trial.
 {¶ 28} The affidavits are similarly deficient. Stedman's affidavit avers that defense counsel had agreed to "present a forensics expert at trial to testify about shot distance, caliber variations and scene evidence." The affidavit of Stedman's parents avers that "no forensics expert was brought in to discredit the State's witnesses and support the defense claims" and, further, that defense counsel "did nothing he claimed he would do in [Stedman's] defense," including calling a forensics expert. In her affidavit, Barbi Smith avers that defense counsel told her prior to trial that he would call a forensics expert "who would testify at trial in order to discredit the State's witnesses and support the defense's claims," but then "seemed to abandon his entire line of defense" when his father-in-law died shortly before trial.
 {¶ 29} When assessing whether or not to grant a hearing, the trial court should examine the contents of the affidavits offered in support of the petition. State v. Nelson (Sept. 21, 2000), Cuyahoga App. No. 77094. A trial court may discount self-serving affidavits from the petitioner or his family members. State v.Moore (1994), 99 Ohio App.3d 748. Although a trial court should give deference to affidavits filed in support of a postconviction relief petition, it may exercise its discretion when assessing the credibility of the affidavits. State v. Calhoun (1999),86 Ohio St.3d 279, paragraph one of the syllabus.
 {¶ 30} Here, one of the three affidavits is Stedman's own self-serving affidavit and another affidavit is from his parents, who are obviously "interested in the success of the petitioner's efforts." Calhoun, supra at 285. Thus, as the trial court stated in its findings of fact and conclusions of law, "petitioner's affidavit is insufficient to support his claims as it is self-serving. The joint sworn statement from petitioner's parents constitutes evidence from interested parties that is only slightly persuasive under Calhoun."
 {¶ 31} Most importantly, however, none of the affidavits indicate how Stedman was prejudiced by counsel's failure to consult with a forensics expert. Although Stedman asserted in his petition that defense counsel should have hired a forensics expert in order to effectively cross-examine the State's expert witnesses, and to testify about the type of bullet removed from the victim's body, the caliber of gun used, and the distance from which it was fired, he offered no evidence demonstrating that he was prejudiced by counsel's failure to do so. The coroner and a detective from the Cleveland Police Department testified for the State at trial regarding these issues. The affidavits attached to Stedman's petition fail to demonstrate that their testimony was not credible and further, make no assertion that Stedman's forensic expert would have testified differently and affected the outcome of the trial. In addition, the affidavits do not demonstrate how a forensics expert would have refuted Potasiewicz's testimony at trial that Stedman reached over and shot Scott as Potasiewicz sat in the front seat of the car. Accordingly, there was no evidence to demonstrate that Stedman was prejudiced by his counsel's failure to call a forensic expert at trial. Although Stedman's brief on appeal contains extensive argument regarding how the lack of a forensics expert prejudiced him at trial, he offered no evidence to the trial court that demonstrated such prejudice. Without such evidence, Stedman failed to sustain his burden of demonstrating ineffective assistance of counsel.
 {¶ 32} Finally, there are countless ways for an attorney to provide effective assistance in a given case and we must give great deference to counsel's performance. Strickland v.Washington (1984), 466 U.S. 668, 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id. Debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 49. Within the purview of trial tactics is defense counsel's selection of witnesses to call at trial. State v.Coulter (1992), 75 Ohio App.3d 219, 230. On this record, we cannot say that defense counsel was ineffective for not calling a forensics expert to testify at trial.
 {¶ 33} Accordingly, the trial court did not err in dismissing Stedman's petition without holding an evidentiary hearing. A review of the petition, the supporting affidavits, the file and the record of the case leads us to conclude that Stedman has failed to raise a genuine issue of material fact that there are substantive constitutional grounds for relief.
 {¶ 34} Appellant's second, third and fourth assignments of error are overruled.
 APPOINTMENT OF EXPERT {¶ 35} In his third assignment of error, Stedman also contends that the trial court erred in denying his motion for appointment of a private investigator and forensics expert, at State expense, so he could "better prove" the claims made in his petition for postconviction relief. We disagree.
 {¶ 36} A petitioner in a postconviction proceeding only possesses the rights given him by statute. State v. Moore
(1994), 99 Ohio App.3d 748, 751. There is no statutory right for the appointment of an expert in a postconviction proceeding.Nelson, supra, citing state v. Trummer (Dec. 16, 1998), Columbiana App. No. 96 CO 97.
 {¶ 37} Appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Sweeney, J. concur.
[1] Stedman specifically states that he is addressing only this claim on appeal and, thus, apparently concedes that the trial court's ruling regarding his other claims was not in error.