OPINION
{¶ 1} This is an appeal by defendant-appellant, Donald Eugene Jones, from a judgment of the Franklin County Court of Common Pleas denying appellant's petition for post-conviction relief.
 {¶ 2} On August 11, 2004, appellant was indicted on two counts of aggravated murder and one count of aggravated robbery. The indictment arose out of the shooting death of Guy R. Justice, on July 28, 2002. On that date, appellant's son, Michael Jones, shot Justice outside the apartment of appellant's sister, Andra Wright. At trial, the state's theory of the case was that appellant arranged a meeting between his son and Justice for the purpose of robbing Justice. Appellant and Justice were acquainted with each other through their joint involvement in drug sales, and Justice owed appellant money.
 {¶ 3} Following a jury trial, the jury returned verdicts finding appellant guilty of one count of aggravated murder and one count of aggravated robbery. The trial court sentenced appellant by judgment entry filed June 11, 2003.
 {¶ 4} On appeal, this court affirmed appellant's convictions but remanded the matter to the trial court for resentencing on the basis that the trial court did not make the required statutory findings for imposing consecutive and minimum sentences. State v. Jones, Franklin App. No. 03AP-696,2004-Ohio-1624 ("Jones I"). Appellant was resentenced by the trial court, but, upon further appeal, this court again reversed and remanded for resentencing. State v. Jones, Franklin App. No. 04AP-663, 2005-Ohio-4069.
 {¶ 5} On February 17, 2004, appellant filed a petition for post-conviction relief, asserting that his trial counsel failed to investigate into the "purchasing and dishonesty of witnesses testimony[.]" More specifically, appellant alleged that his son, Michael Jones, had been coerced and manipulated into providing false testimony. On February 26, 2004, the state filed an answer and a motion to dismiss appellant's petition.
 {¶ 6} On December 16, 2005, the trial court filed a decision and entry denying appellant's petition for post-conviction relief. The court concluded that appellant's self-serving affidavit did not support a claim for ineffective assistance of counsel, and that there was no evidence to support appellant's assertion that the state presented false testimony. The court also found that appellant failed to set forth sufficient operative facts to warrant a hearing.
 {¶ 7} On appeal, appellant sets forth the following two assignments of error for review:
I. THE TRIAL COURT ERRED IN DISMISSING THE PETITION ON ITS MERITS, FACT AND LAW REQUIRE GRANTING RELIEF IN THE PARTICULAR CASE.
II. THE TRIAL COURT SHOULD HAVE HELD AN EVIDENTIARY HEARING.
 {¶ 8} Appellant's assignments of error are interrelated and will be considered together. Under these assignments of error, appellant contends that the trial court erred in dismissing his petition and in failing to grant him an evidentiary hearing.
 {¶ 9} Generally, "[t]he post-conviction relief process is a collateral civil attack on a criminal judgment, not an appeal of the judgment[,]" and such relief provides a "`means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained' in the trial court record." State v. Campbell,
Franklin App. No. 03AP-147, 2003-Ohio-6305, at ¶ 13, quotingState v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233.
 {¶ 10} R.C. 2953.21 governs petitions for post-conviction relief, and states in pertinent part:
(A)(1)(a) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
* * *
(C) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all of the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *
 {¶ 11} A criminal defendant seeking to challenge a conviction through a petition for post-conviction relief "is not automatically entitled to a hearing." State v. Reyes, Wood App. No. WD-04-040, 2005-Ohio-2097, at ¶ 4. Rather, prior to granting a hearing, the court must first determine, pursuant to R.C.2953.21(C), whether there are substantive grounds for relief. Id. Further, "[a] trial court's denial of a postconviction relief petition without a hearing must be reviewed on an abuse of discretion standard." Id.
 {¶ 12} In a petition for post-conviction relief raising a claim of ineffective assistance of counsel, a petitioner "bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." State v. Jackson (1980), 64 Ohio St.2d 107, syllabus.
 {¶ 13} In support of his petition for post-conviction relief, appellant submitted his own affidavit, as well as the affidavits of Victor Price, Andra Wright, and Michael Jones. Both Wright and Jones previously testified at appellant's trial on behalf of the prosecution.
 {¶ 14} In his affidavit, Price states that he witnessed the July 28, 2002 incident "upstairs in his back room at 1185 Lockhurst Road," and he observed the victim, Justice, pull out a gun; Justice and Michael Jones (hereafter "Jones") then "started having words," and they struggled over Justice's gun. (Price Affidavit, at ¶ 6.) According to Price, he observed Jones strike Justice in the face with a gun, and Justice cocked his gun before being shot. Price further states that he was "scared to come forward at the time of the incident due to duress of fear of Guy Justice's family." Price also avers that he "would" or "may" have disclosed such information "if a person on behalf of Donald Jones, and or, Mike Jones' defense team had contacted him[.]" (Price Affidavit, at ¶ 11-12.)
 {¶ 15} Appellant contends in his affidavit that he asked his counsel to speak to various individuals/neighbors of the apartment complex where Justice died, including Price, but that his appointed counsel failed to make any substantial investigation into his request. A trial court, however, may exercise its discretion when assessing the credibility of affidavits, and "a trial court may discount self-serving affidavits from the petitioner or his family members." State v.Stedman, Cuyahoga App. No. 83531, 2004-Ohio-3298, at ¶ 29.
 {¶ 16} Here, appellant's affidavit does not indicate when he made his counsel aware of Price as a potential witness, and the record contains no affidavit by trial counsel corroborating any such advisement. State v. Woods (Nov. 29, 2001), Cuyahoga App. No. 79638 (court acted within its discretion in discounting self-serving affidavit of defendant asserting his counsel was made aware of witness in a timely manner where affidavit lacked specific information as to timing of his advisement to counsel, or a corroborating affidavit by trial counsel). Further, trial counsel's decision whether to call a witness generally "`falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" State v. Towler,
Franklin App. No. 05AP-387, 2006-Ohio-2441, at ¶ 11, quotingState v. Treesh (2001), 90 Ohio St.3d 460, 490. In the present case, the trial court noted the "self-serving" affidavit of appellant and lack of operative facts sufficient to support his claim of alleged deficiency, and we find no abuse of discretion by the court. See Woods, supra.
 {¶ 17} Moreover, even assuming appellant could show that his counsel was advised of this witness, and that his counsel's performance was deficient in failing to contact Price, appellant has not demonstrated prejudice. The state contends, and we agree, that Price's statements in his affidavit do not substantially differ from, and are cumulative of, testimony presented at trial. Specifically, as set forth in this court's prior decision, one of the state's witnesses, Melanie Spears, testified that she "saw Michael pull out a gun and hit Justice in the face with it."Jones I, supra, at ¶ 7. Spears further testified regarding a struggle between Jones and Justice, and that Jones attempted to prevent Justice from retrieving a gun from his pocket. Thus, even accepting appellant's claim that he contacted his counsel about this potential witness, the supporting materials are insufficient to warrant relief, as the alleged testimony "would not have reasonably led to an acquittal." Woods, supra.
 {¶ 18} In a similar vein, the affidavit of appellant's sister, Wright, generally tracks her prior trial testimony. In the affidavit, Wright avers that, on the evening of the incident, Jones and Spears asked her to set up a meeting with Justice to buy some crack, but Wright told them she wanted no part in such a transaction. She subsequently received a call from appellant. Later, when Justice, Jones, and appellant were all at Wright's residence, Justice displayed a gun he had obtained; Jones took the gun and looked it over. Wright and appellant then got into an argument, and Jones came inside and asked Wright what was wrong. She told him that appellant was trying to start trouble. Jones then went outside and began arguing with Justice. According to Wright, as she began walking up the stairs, she saw Jones and Justice struggling with a gun, and she heard Jones tell Justice to drop the gun. Wright continued up the stairs to call the police, and as she was sitting on her bed, she heard a voice say, "he's going to pop you." Wright then heard a gunshot.
 {¶ 19} During the trial, Wright testified that Jones and Spears came to her house on the night of the incident, and Jones wanted Wright to call Justice to have him come to her residence so that Jones "could rob him." Jones I, supra, at ¶ 5. Wright indicated to Jones that she did not want to be involved, so Jones and Spears left. Later that same evening, Justice, appellant, and appellant's girlfriend, Charlena Robinson, came over to Wright's house. Justice was showing a new gun to those at the house. Wright and appellant subsequently got into an argument outside, and Wright went into the house and slammed the door. As she was heading upstairs, Wright looked through the door and observed Jones put a gun against Justice's neck. Wright continued upstairs to call the police, and, as she was looking for the telephone, "she heard a male voice that sounded like appellant, say: `Pop him,' and then she heard a gunshot." Id.
 {¶ 20} Here, the substance of Wright's affidavit does not present information that is new, or that differs materially from her trial testimony. Further, to the extent there may be inconsistencies, the affidavit does not present evidence sufficient to create a reasonable probability that the jury would have reached a different result. Finally, as noted above, a trial court acts within its discretion in deciding whether to discount affidavits submitted by family members, "who are obviously `interested in the success of the petitioner's efforts.'"Stedman, supra, at ¶ 30, quoting State v. Calhoun (1999),86 Ohio St.3d 279, 285. Accordingly, we conclude that the trial court did not err in finding the affidavit of appellant's sister did not provide substantive grounds for relief. See State v.Dukes (Dec. 3, 1996), Franklin App. No. 96APA03-333 (trial court did not err nor abuse its discretion in finding that affidavit, which did not contradict affiant's trial testimony, lacked substantive grounds for relief).
 {¶ 21} We next consider the recanting affidavit of appellant's son, Jones. Prior to the trial of appellant, Jones entered into a plea agreement with the state, in which he entered a guilty plea to aggravated robbery, and involuntary manslaughter, both counts including a firearm specification.
 {¶ 22} During appellant's trial, Jones was called as a witness by the prosecution. Jones testified that he received a call from appellant on the date of the incident, during which appellant asked him to drive to a bar and rob Justice because Justice owed his father money. Jones arrived at the bar, but then decided not to go through with the robbery. Appellant called Jones again that night, asking Jones to meet him at Wright's house and to "do it there." (Tr. Vol. III, at 358.)
 {¶ 23} Later, when Jones, appellant, and Justice were all at Wright's house, appellant asked Jones if it was "still going down." (Tr. Vol. III, at 366.) Jones and Justice subsequently got into an argument outside, and Jones grabbed Justice's gun to stop him from cocking the weapon. Jones then pulled out his own gun and struck Justice in the face. Justice continued trying to cock his weapon, so Jones pulled the trigger. Jones further testified that, during the struggle with Justice, his father (appellant) told him to "[s]hoot that motherfucker, it's either you or him, you better shoot that motherfucker[.]" (Tr. Vol. III, at 370.)
 {¶ 24} In his affidavit, Jones states that, during appellant's trial, he [Jones] "made direct false testimony * * * when he testified that his father * * * controlled him and his gun[.]" (Jones Affidavit, at ¶ 3.) Jones further states that the testimony he gave "was nearly one hundred percent dishonest, and lacked absolutely any to little truthfulness[.]" (Jones Affidavit, at ¶ 4.)
 {¶ 25} Regarding the affidavit of appellant's son, courts have held that "`newly discovered' evidence which purports to recant trial testimony should be looked on with the utmost suspicion." State v. Florence (Nov. 21, 1997), Montgomery App. No. 16316, quoting State v. Howe (Jan. 24, 1996), Montgomery App. No. 15139. Motions based upon recanted testimony are suspect "because, `where a witness makes subsequent statements directly contradicting earlier testimony the witness either is lying now, was lying then, or lied both times.'" United States v. Earles
(N.D.Iowa, 1997), 983 F.Supp. 1236, 1248, quoting United Statesv. Provost (C.A.8, 1992), 969 F.2d 617, 620. Further, "a witness's recantation of testimony * * * does not, of itself, warrant a new trial." State v. Seiber (Sept. 2, 1993), Cuyahoga App. No. 63717. Rather, "[a] motion based upon such evidence should be granted only where the court is reasonably well satisfied that the testimony given by a material witness was false." State v. Isham (Jan. 24, 1997), Montgomery App. No. 15976. Further, "[e]vidence of perjury, without proof of knowledge on the part of the prosecution, does not implicate constitutional rights and therefore does not support a petition for post-conviction relief." Id.
 {¶ 26} Courts have also recognized that "[c]onfessions given only after the confessor's conviction, and especially when proffered by relatives or friends, are engulfed in an `aura of suspicion and doubt.'" United States v. Kamel (C.A.7, 1992),965 F.2d 484, 494, quoting United States v. Oliver (C.A.7, 1982), 683 F.2d 224, 229. As such, they "are of limited probative value at a second trial, and hence are unlikely to lead to an acquittal." Kamel, supra, at 494.
 {¶ 27} The statements in Jones' affidavit, in which he avers that he "made direct false testimony before the * * * jury when he testified that his father * * * controlled him and his gun[,]" were inconsistent with the testimony of other witnesses at trial. Further, there was no other evidence presented to corroborate Jones' affidavit. In considering the petition for post-conviction relief, the trial court could have viewed with skepticism the motivation for the affidavit, and the court could have reasonably concluded that Jones, having testified and having been sentenced for his own involvement in the crime, was motivated to submit an affidavit exonerating his father. See Bell v. Dretke (N.D.Tex. 2006), case No. 3:04-CV-0492-P (having "received the benefit of any bargain that he had with the state * * * [accomplice had] nothing to lose by recanting his testimony"). Under these circumstances, and in the absence of other independent evidence, the trial court was not required to grant a hearing based on the recanting affidavit of appellant's son.
 {¶ 28} Moreover, even accepting Jones' allegations, appellant has not shown that this testimony would have resulted in his acquittal. Rather, the jury could have convicted him based upon the testimony of Spears, as well as other evidence presented at trial that remains unchallenged. At trial, Spears related that, after Jones pulled out a gun and hit Justice in the face, Jones told Justice to empty his pockets and Justice refused. After some pushing between the two, Jones "stated: `Yeah, you're going to give me all your money.' Appellant stated: `Shoot him, * * * shoot him. It's either him or you. Shoot him.'" Jones I,
supra, at ¶ 7. According to Spears, Jones then put the gun to Justice's chest and shot him.
 {¶ 29} Upon review of the record, we find that the trial court did not err in finding that the purported newly discovered evidence, including the recantation of appellant's son, provided no substantive grounds for relief. Further, the trial court did not abuse its discretion in finding that appellant failed to present evidence to support his contention that the state knowingly presented false testimony. Accordingly, we conclude that the trial court properly denied the request for an evidentiary hearing and the petition for post-conviction relief.
 {¶ 30} Based upon the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
French and McCormac, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.