[Cite as *State v. Robinson*, 2019-Ohio-4458.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107950 |
| v. | : | |
| SAMUEL ROBINSON, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 31, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-620857-A

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kerry A. Sowul, Assistant Prosecuting Attorney, *for appellee.*

Michael H. Peterson and Thomas A. Rein, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Samuel Robinson, appeals from his convictions following a bench trial. He raises the following assignments of error for review:

> 1. The trial court erred by denying the motion to dismiss when the delay in bringing defendant to trial violated his due process rights under the

Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

2.  The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(A), on the charges, and thereafter entering a judgment of conviction on those offenses as those charges were not supported by sufficient evidence, in violation of defendant's right to due process of law, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

3.  Robinson's convictions are against the manifest weight of the evidence.

{¶ 2}  After careful review of the record and relevant case law, we affirm. The trial court did not err by denying Robinson's motion to dismiss, as Robinson failed to establish that he suffered actual prejudice due to preindictment delay.  In addition, Robinson's rape and kidnapping convictions are supported by sufficient evidence and are not against the manifest weight of the evidence.

## I.  Procedural and Factual History

{¶ 3}  In August 2017, Robinson was named in a three-count indictment, charging him with two counts of rape in violation of R.C. 2907.02(A)(2), and a single count of kidnapping in violation of R.C. 2905.01(A)(4), with a sexual motivation specification.  The indictment stemmed from allegations that Robinson raped the victim, R.H., on or about September 5, 1997.

{¶ 4}  In February 2018, Robinson filed a motion to dismiss for preindictment delay, arguing "the indictment places [Robinson] in the patently unfair position of having to defend himself against vaguely remembered allegations that are nearly 20 years old."  A hearing on the motion to dismiss was held in March 2018.

{¶ 5} At the hearing, defense counsel stated that the alleged rape in this case occurred after Robinson and the victim visited a bar together and had "a few drinks." Given the delay between the date of the offense and the criminal indictment, defense counsel argued that Robinson was severely prejudiced by the inability to locate witnesses who are unavailable, unidentifiable, or unable to recall the events that occurred nearly 20 years earlier due to faded memories. Specifically, Robinson asserted that he was prevented from obtaining potentially exculpatory evidence from (1) witnesses who were at the bar on the evening of the incident, (2) the victim's roommate who "would have had information" about the night of the incident, and (3) individuals who were believed to be inside the home where the alleged rape occurred. Finally, counsel asserted that the delay in the commencement of the prosecution was unjustified and that the state's case relies on the same evidence that was available in 1997.

{¶ 6} The state opposed the motion to dismiss, arguing that Robinson's reference to "potential witnesses" demonstrates that his position relied on mere speculation. The state further maintained that the delay in the prosecution was justified. According to the state, Robinson was not directly linked to the crime until the state obtained DNA evidence implicating Robinson in 2017.

{¶ 7} At the conclusion of the hearing, the trial court denied the motion to dismiss, stating, in pertinent part:

> Upon review, I find that there is considerable, although speculative, evidence that the defendant may have been prevented from obtaining testimony and evidence; nonetheless, that is, for the most part, highly

speculative. The court would have to bear that in mind during any trial, whether this is to be a bench trial or jury trial.

I also am forced to find that the State did not cause any delay in indicting this case for purposes of scoring an advantage, a tactical advantage over the defendant, but that any delays were the result, A, of the victim's failure to pursue matters; and B, the Cleveland Police Department's failure to process the rape kit in a timely fashion, which, while not to be condoned, was certainly not done for any ulterior motives.

{¶ 8} The matter then proceeded to a bench trial, where the following relevant evidence was adduced.

{¶ 9} R.H. testified that in 1997, she and Robinson worked together at a convention center located in Cleveland, Ohio. R.H. testified that Robinson pursued her romantically for a period of time and that she eventually agreed to go on a date with him. On September 5, 1997, Robinson picked R.H. up at her apartment in his vehicle. R.H. testified that she lived at the apartment with her minor children at the time. On that evening, Brian Towns agreed to watch R.H.'s children while she was with Robinson.

{¶ 10} R.H. testified that she and Robinson then drove to a nearby bar to talk and have drinks. R.H. testified that she had "one drink," and after a period of time, she asked Robinson to take her home. R.H. stated that once she was inside Robinson's vehicle, he began driving in a direction that was not towards her apartment. R.H. testified that Robinson stated that "he had to make a quick stop." Robinson then drove to a location R.H. believed to be Robinson's home. When they arrived, Robinson got out of the vehicle, walked around to the passenger's side of

the vehicle, forced R.H. out of the vehicle, and took her inside his home. R.H. testified that she was "nervous and scared" and "didn't know what to expect of what was going on." She explained that Robinson "actually picked [her] up" and "carried [her] into the house," because she "was trying not to go into it."

{¶ 11} Once inside the home, Robinson covered R.H.'s mouth and "took [her] into a back room" where he "raped" her. R.H. testified that, as Robinson carried her up a narrow stairway to the room where the rape occurred, she observed individuals sleeping "on a blanket or a pallet or something on the floor." When they were alone inside the room, Robinson "told [R.H.] to not say anything and to be quiet." He then held her wrists down and took off her clothes. R.H. testified that she was terrified and was struggling to fight and free herself from Robinson. However, R.H. "felt like [she] was drugged" and was "helpless" to defend herself. R.H. testified that Robinson continued to hold her arms down as he performed oral sex on her. Robinson then "put his penis in [her] vagina." R.H. testified that she did not want to engage in sexual intercourse with Robinson. She stated that she "kept telling [Robinson] to stop" and that she could not move while Robinson was on top of her. R.H. was unsure if Robinson wore a condom.

{¶ 12} When the incident ended, Robinson drove R.H. home. R.H. testified that she "was crying" as she entered her apartment and encountered Towns. According to R.H., Towns immediately "knew something was wrong and called the police." When the police responded, R.H. was transported to a hospital and a rape kit was completed.

{¶ 13} During her cross-examination, R.H. denied being intoxicated on the night of the incident and testified that she did not recall "telling the nurse at the hospital that [she] had multiple drinks." Furthermore, R.H. testified that she did not recall telling investigators that she was taken to a basement, and did not recall reporting to the hospital that she was unemployed at the time of the incident. Regarding her testimony that there were people inside the home during the incident, R.H. expressed that those individuals likely did not wake up while she was "yelling and saying no" because Robinson covered her mouth as he carried her past the room where the people were asleep.

{¶ 14} In addition, R.H. testified that she did not cancel any appointments with the detectives and would be "surprised" if the police report indicated that she failed to cooperate with the police. R.H. further did not recall telling the police that Robinson did not wear a condom and ejaculated inside of her. Regarding the DNA evidence recovered from her rape kit, R.H. testified that she was having consensual sex with Towns at the time of the incident, and was not aware that there was DNA from "another man, aside from [Robinson] and aside from Mr. Towns, whose DNA was [discovered] inside [her] vagina." R.H. further stated that she was not aware that Robinson's DNA was not discovered inside her vagina, and she had "no possible explanation as to why there was male DNA in [her] anus that evening." However, R.H. reiterated that she was sure she did not have sex with anyone else that evening and had no knowledge of being raped by someone else.

{¶ 15} Brian Towns testified he and R.H. have a daughter together and were involved in an "on and off" romantic relationship in 1997. At the time of the incident, Towns and R.H. were not living together. However, Towns testified that he frequently went to R.H.'s home to care for his then three-year old daughter. On the night of the incident, Towns recalled being at R.H.'s home with her children while she was out. Towns testified that R.H. had a "confused" look on her face when she returned home for the evening. He described R.H. as follows:

> She came in. And I noticed she had this look on her face, like a look I had never seen on her. It was a — I can't say if she had been attacked or anything like that. But it was just a look and it threw me off. And I said, are you okay? And she said, I don't know. I said, what happened? And right there I just said, you want me to call the police? And I can't remember if she said yes or no. But I know I ended up calling them anyway.

{¶ 16} Towns testified that R.H. did not appear intoxicated. He did not recall the complete details of what R.H. told him about the incident. However, Towns recalled R.H. being transported to the hospital after he and R.H. separately spoke with the police.

{¶ 17} Sandra Musolf testified that she was a registered nurse at St. Vincent Charity Medical Center in 1997. Musolf confirmed that she would have been working as a staff nurse in the hospital's emergency room in the fall of 1997. In the course of her testimony, Musolf was presented with a copy of R.H.'s medical records, marked state's exhibit No. 1. Musolf testified that the triage notes from R.H.'s emergency room chart states that R.H. was taken to the hospital based on the "alleged sexual assault by boyfriend at approx. [01:00 a.m.]." Musolf testified that

she performed a rape-kit examination of R.H. and collected various specimens for forensic examination. Specifically, Musolf stated that she collected "oral swabs or smears, vaginal swabs and smears, rectal swabs and smears, saliva disc, fingernail scrapings, head hair, pubic hair, pubic hair combings, and the comb." In addition, Musolf collected the clothing R.H. was wearing at the time of the incident. The relevant medical records reflect that R.H. reported "oral, vaginal and rectal" penetration by one male. R.H. further reported that she believed the assailant ejaculated and did not use a condom.

{¶ 18} Lindsey Nelsen-Rausch, a scientist with the Bureau of Criminal Investigation, testified for the state as an expert in forensic DNA analysis. Nelsen-Rausch received samples of evidence taken from the rape kit, a DNA standard from Robinson, and a DNA sample from Towns. She then analyzed the samples for the presence of DNA, generated a laboratory report, and testified about her findings.

{¶ 19} In relevant part, Nelsen-Rausch testified that the testing of the vaginal swabs taken from R.H. generated two profiles, one of R.H. and one of an unknown male. Robinson and Towns were excluded as the source of the male DNA. R.H.'s anal swabs also generated two profiles, one of R.H. and one of a male. However, the male profile was insufficient for comparison. Regarding the testing performed on R.H.'s clothing and her skin swabs, Nelsen-Rausch testified that Robinson and Towns were excluded from the DNA profiles.

{¶ 20} With respect to the pubic hair combings, testing revealed trace debris on the comb. Nelsen-Rausch explained that trace debris refers to the discovery of

"either a parent hair or fibers on the comb." A swab was taken from the comb and the trace debris. Nelsen-Rausch testified that testing of the swab revealed a DNA profile that contained a mixture. Ultimately, R.H. and Robinson were identified as the contributors to the DNA profile. Nelsen-Rausch testified that Robinson's DNA came "from a source other than sperm," such as from his skin cells or saliva.

{¶ 21} Timothy Clark testified that he is employed as an investigator by the Cuyahoga County Prosecutor's Office. In April 2017, Investigator Clark obtained a DNA swab from the inside of Robinson's cheek. When questioned by Investigator Clark, Robinson denied ever going on a date with R.H. and denied having any sexual contact with her. He further denied ever having R.H. inside his vehicle. Investigator Clark testified that he asked Robinson how R.H. could have known where he lived or the type of car he drove. According to Investigator Clark, Robinson indicated that he and R.H. "had talked about it at work."

{¶ 22} At the close of state's case, the trial court dismissed a single count of rape, to wit: fellatio, as charged in Count 2 of the indictment. Defense counsel rested without presenting a witness. The trial court then found Robinson guilty of rape and kidnapping, with a sexual motivation specification. Robinson was sentenced to a three-year term of imprisonment.

{¶ 23} Robinson now appeals from his convictions and the denial of his motion to dismiss.

## II.  Law and Analysis

### A.  Preindictment Delay

{¶ 24} In his first assignment of error, Robinson argues the trial court erred by denying his motion to dismiss for preindictment delay.

{¶ 25} In reviewing a trial court's decision on a motion to dismiss for preindictment delay, this court applies a de novo standard of review to the legal issues, but we afford great deference to the findings of fact made by the trial judge. *State v. Walker,* 8th Dist. Cuyahoga No. 106414, 2018-Ohio-3669.

{¶ 26} The statute of limitations for a criminal offense is the defendant's primary protection against overly stale criminal charges.  *U.S. v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).  However, the Due Process Clause of the Fifth Amendment provides additional protection in cases where the preindictment delay was unjustifiable and caused actual prejudice. *U.S. v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

{¶ 27} In *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, the Ohio Supreme Court established a burden-shifting framework for analyzing a due process claim based on preindictment delay.  *Id.* at ¶ 13.  Under this framework, the defendant bears the initial burden of presenting evidence of actual prejudice.  *Id.*  "Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay." *Id.* at ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127.  Therefore, if the

defendant fails to establish actual prejudice, the court is not required to consider the reasons for the delay. *Adams* at ¶ 107.

{¶ 28} "A court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" *Id.*, quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52. A claim of actual prejudice should be scrutinized "vis-à-vis the particular evidence that was lost or unavailable as a result of the delay" and "the relevance of the lost evidence and its purported effect on the defense." *Id.*

{¶ 29} We note that "[t]he 'possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice.'" *Adams* at ¶ 105. "Those are 'the real possibilit[ies] of prejudice inherent in any extended delay,' and statutes of limitations sufficiently protect against them." *Id.*, quoting *Marion*, 404 U.S. at 326, 92 S.Ct. 455, 30 L.Ed.2d 468. "That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement." *Id.*

{¶ 30} In *Jones,* the court explained that even when a defendant does not know what the exact substance of an unavailable witness's testimony would have been, actual prejudice may still be shown where missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense. *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 157, 472 N.E.2d 1097 (1984).

{¶ 31} Based on *Jones*, a defendant is not required to establish "precisely" what an unavailable witness would have testified to at trial and that the testimony would have been directly exculpatory. *Id.* at ¶ 27. However, a defendant cannot rely upon broad assertions of missing evidence or an unavailable witness to establish prejudice. A defendant must demonstrate a viable, tangible connection between the missing evidence or the unavailable witness to the defense of the case. *State v. Richardson*, 2016-Ohio-5843, 70 N.E.3d 1175 (8th Dist.). The due process requirement of actual prejudice may be shown upon "the proven unavailability of specific evidence or testimony that would attack the credibility or weight of the state's evidence against a defendant, and thereby aid in establishing a defense." *Jones* at ¶ 25.

{¶ 32} Once a defendant has established actual prejudice, the state must produce evidence of a justifiable reason for delay in the commencement of prosecution. *State v. Hunter*, 2017-Ohio-4180, 92 N.E.3d 137 (8th Dist.), citing *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 51. A delay can be found to be unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant, *see Marion*, 404 U.S. at 324, 92 S.Ct. 455, 30 L.Ed.2d 468, or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased. *Luck* at 158. The length of delay will typically be the "key" in determining whether a delay caused by the state's negligence or error in judgment

is justifiable. *Id.* Thereafter, the due process inquiry involves a balancing test by the court, weighing the reasons for the delay against the prejudice to the defendant, in light of the length of the delay. *Id.* at 154.

{¶ 33} On appeal, Robinson argues he suffered actual prejudice resulting from (1) his faded memory and his inability recall events that occurred over 20 years ago, and (2) his inability to locate and present certain witnesses on his behalf, including other patrons who were in the bar during their date, and the individuals alleged to have been inside Robinson's home during the incident.

{¶ 34} After reviewing the record, we are unpersuaded by Robinson's position. Regarding Robinson's own memory, this court has routinely held that "'a defendant's own general assertion that he does not remember details of an event that occurred nearly 20 years ago does not, in and of itself, constitute actual prejudice.'" *Hunter* at ¶ 18, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, ¶ 26; *State v. Ricosky*, 5th Dist. Stark No. 2003CA00174, 2004-Ohio-2091, ¶ 15. On appeal, Robinson references the fact that he was unable to recall going on a date with R.H. during his interview with Investigator Clark. He suggests that defense counsel may have been able to explain the presence of Robinson's DNA had he been able to recall spending time with R.H. Viewing Investigator Clark's testimony in its entirety, we reject Robinson's attempt to raise alternative theories that are not supported by the evidence. In this case, Robinson did not express to Investigator Clark that he could not recall whether he went on a date with R.H. Rather, he unambiguously denied going on a date with R.H., denied having drinks

with R.H., denied having sexual contact with R.H., and denied having R.H. inside his vehicle. For these reasons, we are unable to conclude that Robinson's theoretical assertions constituted actual prejudice.

{¶ 35} We are equally unpersuaded by Robinson's reliance on the missing witnesses who may have been present in the bar on the night of the incident, and/or the individuals R.H. observed sleeping inside Robinson's home during the incident. In this case, Robinson has not specifically identified the missing witnesses or the nature of their unavailability. Furthermore, as discussed below, we find Robinson has failed to explain or identify a viable, tangible connection between the missing witnesses and his ability to minimize the impact of the state's evidence and bolster the defense.

{¶ 36} With respect to the witnesses who may have been in the bar and observed the victim's demeanor prior to the incident, we note that Robinson denied ever accompanying R.H. on a date during his meeting with investigator Clark. In addition, R.H.'s testimony reflects that nothing unusual happened while she and Robinson were in the bar. Rather, the circumstances only changed once Robinson ignored R.H.'s request to take her home and drove to the location of the sexual assault. Witnesses who were present in the bar that evening would be unable to offer any probative testimony regarding the nature of appellant's conduct once he was alone with R.H. after they left the establishment. Any position to the contrary would require this court to speculate. Under the totality of these circumstances, we find no viable connection between these missing witnesses and the defense of the case.

{¶ 37} Regarding the individuals who may have been present inside Robinson's home during the incident, Robinson maintains that their testimony "*could* have supported [his] claim that he did not rape this woman." Robinson suggests that if R.H. had yelled for Robinson to stop as she alleged, the missing witnesses "would have heard it." We are unpersuaded by Robinson's argument. Because Robinson is merely speculating as to what these missing witnesses may or may not have heard, whether the witnesses would have assisted the defense or aided the prosecution is entirely unknown. In this case, R.H. explained that Robinson covered her mouth and told her to be quiet while he carried her past the room where the individuals were sleeping. Robinson then took her to a "back room," where the rape occurred. Given the actions Robinson took to ensure R.H. was not heard, we find Robinson has not demonstrated that testimony from these missing witnesses would have attacked the credibility or weight of the state's evidence against a defendant, and thereby aided his defense. R.H. was thoroughly cross-examined about these missing witnesses and whether they would have heard her yelling at Robinson to "stop" during the rape. Ultimately, this issue was considered, but rejected, by the trier of fact during its assessment of R.H.'s testimony and the credibility of her allegations against Robinson.

{¶ 38} Based on the foregoing, we find that Robinson has failed to establish a violation of his due process rights. Robinson has not shown that the preindictment delay caused him actual prejudice; rather, his arguments are speculative in nature.

Having determined that Robinson failed to prove actual prejudice, it is not necessary to determine whether there were justifiable reasons for the delay.

{¶ 39} Accordingly, Robinson's first assignment of error is overruled.

### B. Sufficiency of the Evidence

{¶ 40} In his second assignment of error, Robinson argues his convictions were not supported by sufficient evidence.

{¶ 41} When assessing a challenge to the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 42} It is well established that the elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered

to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence, on the other hand, is evidence that requires "the drawing of inferences that are reasonably permitted by the evidence." *Id. See also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.").

{¶ 43} In this case, Robinson was found guilty of rape in violation of R.C. 2907.02(A)(2). The rape statute provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2).

{¶ 44} Robinson was also found guilty of kidnapping in violation of R.C. 2905.01(A)(4), which states that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity * * * with the victim against the victim's will * * *."

{¶ 45} In challenging the sufficiency of the evidence supporting his convictions, Robinson does not dispute any specific element of the foregoing offenses. Rather, Robinson broadly suggests that R.H.'s testimony was "less than forthright" about her sexual history and contained "fabrications on material and critical information relating to the DNA[.]" He contends that it is "preposterous" that R.H. "could give no explanation about how another man's DNA was found on

her person." Thus, Robinson asserts that "[g]iven the alleged victim's testimony in this case, it only stands to reason that the only logical conclusion is that the evidence does not add up or suffice to justify any conviction in this case. To hold otherwise would defy logic."

{¶ 46} Here, Robinson's sufficiency argument hinges on the veracity and/or credibility of the victim. However, arguments concerning inconsistent evidence and witness credibility are matters relevant to the weight, rather than the sufficiency, of the evidence. *State v. Dennis*, 10th Dist. Franklin No. 08AP-369, 2008-Ohio-6125, ¶ 32-44; *State v. Haynes*, 10th Dist. Franklin No. 03AP-1134, 2005-Ohio-256, ¶ 24; *State v. Hudson*, 8th Dist. Cuyahoga No. 91803, 2009-Ohio-6454, ¶ 44. As such, we will address these considerations under our review of the manifest weight of the evidence in the third assignment of error.

{¶ 47} Having reviewed the record in its entirety, we find that the state introduced ample evidence to establish that Robinson restrained R.H.'s liberty and compelled her to submit to sexual conduct, against her will, by force or threat of force. In this case, R.H. testified that following her date with Robinson, he drove her to his home, forced her out of his car, and physically carried her inside. Once inside the home, Robinson covered R.H.'s mouth, took her into a room, and held her wrists down as he struggled to take off her clothing. R.H. testified that Robinson then "forced himself on top of [her]" and held her arms down as he performed oral sex on her. Robinson then put his penis in R.H.'s vagina, as she "just kept telling him to stop." R.H. stated that she was "terrified" and attempted to fight Robinson

off and free herself, but "felt helpless." She testified that she could not move while he was on top of her and adamantly stated that she did not want to engage in sexual intercourse with Robinson. Following this incident, R.H. was taken to the hospital and a rape kit was collected. Forensic testing of the rape kit revealed that Robinson's DNA was identified as a contributor to the DNA profile discovered on a swab taken from "trace debris" and the comb used to obtain pubic hair combings from R.H.

{¶ 48} Viewing the foregoing evidence presented at trial in a light most favorable to the prosecution, we find that the rape and kidnapping convictions are supported by sufficient evidence.

{¶ 49} Robinson's second assignment of error is overruled.

## C. Manifest Weight of Evidence

{¶ 50} In his third assignment of error, Robinson argues his convictions were against the manifest weight of the evidence.

{¶ 51} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *Thompkins*, 78 Ohio St.3d, at 387, 678 N.E.2d 541. In a manifest challenge, the reviewing court must examine the entire record, weigh the evidence and all the reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 52} In conducting such a review, the Ohio Supreme Court has stated that the appellate court "sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of conflicting testimony." *Id.* at 546-547, quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The Supreme Court's characterization of the appellate court as a "thirteenth juror" refers to the appellate court's "'discretionary power to grant a new trial.'" *Id.* at 547, quoting *Martin* at 175. As a "thirteenth juror," the appellate court may disagree with the factfinder's resolution of the conflicting evidence and, in effect, create a deadlocked jury, which requires a new trial.

{¶ 53} However, our status as a "thirteenth juror" is not equal to the other 12 jurors, who are uniquely positioned to view the witnesses' demeanor, gestures, facial expressions and voice inflections. These outward behaviors are not evident in a written transcript. Demeanor is not what the witness says, but the manner in which he says it. Demeanor evidence is invaluable in assessing a witness's credibility, yet it is totally lost in transmission to the court of appeals. It is for this reason that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, quoting *State v. Lawson,* 2d Dist. Montgomery No. 16288,

1997 Ohio App. LEXIS 3709, 4 (Aug. 22, 1997). Although we have the discretionary power of a "thirteenth juror" to grant a new trial, that power "'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 547, quoting *Martin* at 175.

{¶ 54} On appeal, Robinson reiterates his argument that R.H. lacked credibility. He contends that R.H.'s accusations are "highly suspicious and not worthy of belief" based on a number of factors, including (1) her inability to explain the presence of DNA from an unknown male contributor, (2) her decision to return to her place of work while Robinson was still employed there, and (3) her inconsistent statements regarding the number of drinks she had on the evening of the incident. Robinson further references inconsistencies between her testimony at trial and her original police statement, including (4) the location of the sexual assault inside the home, (5) whether Robinson wore a condom during the sexual assault, and (6) whether Robinson ejaculated inside of her.

{¶ 55} After careful consideration, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against the convictions. The record reflects that R.H. was thoroughly cross-examined regarding the alleged inconsistencies identified by Robinson on appeal. The trier of fact was presented with all relevant evidence, and was in the best position to weigh the witnesses' credibility. While R.H.'s testimony varied slightly from the original statements she made to the police and medical personnel in 1997, she consistently alleged that Robinson forced her to engage in vaginal intercourse against her will. Her testimony

was corroborated by the discovery of Robinson's DNA in the DNA profile recovered from the combing of R.H.'s pubic hair region. We recognize that the state was unable to adequately explain the presence of another male's DNA on certain biological samples taken from R.H. However, we find the presence of another man's DNA did not negate the credibility of the specific accusations levied against Robinson given the presence of his DNA on samples taken from R.H.'s pubic region. As stated, Robinson denied being with R.H. on the night of the incident and denied all allegations of sexual conduct. Under these circumstances, we find that Robinson's convictions for rape and kidnapping are not against the manifest weight of the evidence.

{¶ 56} Robinson's third assignment of error is overruled.

{¶ 57} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

**MARY EILEEN KILBANE, A.J., CONCURS;**
**MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY**