[Cite as *State v. Robinson*, 2021-Ohio-3206.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,          :

                              No. 110278

    v.                                    :

SAMUEL ROBINSON,                       :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 16, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-620857-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Katherine E. Mullin, Assistant Prosecuting Attorney, *for appellee.*

Friedman|Gilbert|Gerhardstein, L.L.C., and Mary Catherine Corrigan, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Samuel Robinson, appeals from the trial court's judgment denying his petition for postconviction relief without a hearing. For the reasons that follow, we affirm.

## I. Background

{¶ 2} The underlying case against Robinson arose from the rape and kidnapping of R.H. on September 5, 1997. Robinson was indicted in 2017 after his DNA was found by Ohio's Bureau of Criminal Investigation when it tested the rape kit that had been collected from R.H. the night of the incident.

{¶ 3} After the trial court denied Robinson's motion to dismiss for preindictment delay, the case proceeded to a bench trial. The evidence adduced at trial was set forth in pertinent part by this court in *State v. Robinson*, 8th Dist. Cuyahoga No. 107950, 2019-Ohio-4458:

> R.H. testified that in 1997, she and Robinson worked together at a convention center located in Cleveland, Ohio. R.H. testified that Robinson pursued her romantically for a period of time and that she eventually agreed to go on a date with him. On September 5, 1997, Robinson picked R.H. up at her apartment in his vehicle. R.H. testified that she lived at the apartment with her minor children at the time. On that evening, Brian Towns agreed to watch R.H.'s children while she was with Robinson.
>
> R.H. testified that she and Robinson then drove to a nearby bar to talk and have drinks. R.H. testified that she had 'one drink,' and after a period of time, she asked Robinson to take her home. R.H. stated that once she was inside Robinson's vehicle, he began driving in a direction that was not towards her apartment. R.H. testified that Robinson stated that 'he had to make a quick stop.' Robinson then drove to a location R.H. believed to be Robinson's home. When they arrived, Robinson got out of the vehicle, walked around to the passenger's side of the vehicle, forced R.H. out of the vehicle, and took her inside his home. R.H. testified that she was 'nervous and scared' and 'didn't know what to expect or what was going on.' She explained that Robinson 'actually picked [her] up' and 'carried [her] into the house,' because she 'was trying not to go into it.'
>
> Once inside the home, Robinson covered R.H.'s mouth and 'took [her] into a back room' where he 'raped' her. R.H. testified that, as Robinson carried her up a narrow stairway to the room where the rape occurred,

she observed individuals sleeping 'on a blanket or a pallet or something on the floor.' When they were alone inside the room, Robinson 'told [R.H.] to not say anything and to be quiet.' He then held her wrists down and took off her clothes. R.H. testified that she was terrified and was struggling to fight and free herself from Robinson. However, R.H. 'felt like [she] was drugged' and was 'helpless' to defend herself. R.H. testified that Robinson continued to hold her arms down as he performed oral sex on her. Robinson then 'put his penis in [her] vagina.' R.H. testified that she did not want to engage in sexual intercourse with Robinson. She stated that she 'kept telling [Robinson] to stop' and that she could not move while Robinson was on top of her. R.H. was unsure if Robinson wore a condom.

When the incident ended, Robinson drove R.H. home. R.H. testified that she 'was crying' as she entered her apartment and encountered Towns. According to R.H., Towns immediately 'knew something was wrong and called the police.' When the police responded, R.H. was transported to a hospital and a rape kit was completed.

* * *

Lindsey Nelsen-Rausch, a scientist with the Bureau of Criminal Investigation, testified for the state as an expert in forensic DNA analysis. Nelsen-Rausch received samples of evidence taken from the rape kit, a DNA standard from Robinson, and a DNA sample taken from Towns. She then analyzed the samples for the presence of DNA, generated a laboratory report, and testified about her findings.

In relevant part, Nelsen-Rausch testified that the testing of the vaginal swabs taken from R.H. generated two profiles, one of R.H. and one of an unknown male. Robinson and Towns were excluded as the source of the male DNA. R.H.'s anal swabs also generated two profiles, one of R.H and one of a male. However, the male profile was insufficient for comparison. Regarding the testing performed on R.H.'s clothing and her skin swabs, Nelsen-Rausch testified that Robinson and Towns were excluded from the DNA profiles.

With respect to the pubic hair combings, testing revealed trace debris on the comb. Nelsen-Rausch explained that trace debris refers to the discovery of 'either a parent hair or fibers on the comb.' A swab was taken from the comb and the trace debris. Nelsen-Rausch testified that testing of the swab revealed a DNA profile that contained a mixture. Ultimately, R.H. and Robinson were identified as the contributors to

the DNA profile. Nelsen-Rausch testified that Robinson's DNA came 'from a source other than sperm,' such as his skin cells or saliva.

Timothy Clark testified that he is employed as an investigator by the Cuyahoga County Prosecutor's Office. In April 2017, Investigator Clark obtained a DNA swab from the inside of Robinson's cheek. When questioned by Investigator Clark, Robinson denied ever going on a date with R.H. and denied having any sexual contact with her. He further denied ever having R.H. inside his vehicle. Investigator Clark testified that he asked Robinson how R.H. could have known where he lived or the type of car he drove. According to Investigator Clark, Robinson indicated that he and R.H. 'had talked about it at work.'

*Id.* at ¶ 9-12 and 18-21.

{¶ 4} At the close of the state's case, the trial court dismissed the rape count charged in Count 2 (fellatio) upon Robinson's Crim.R. 29 motion. Defense counsel rested without presenting any witnesses. *Id.* at ¶ 22. Before announcing its verdict, the trial court stated that "[i]f the defense had been that sexual activity took place but it was consensual, this would be a much more difficult decision for me to reach. But because defendant's DNA was found in the pubic hair of the victim, there is no reasonable way out on this." (Tr. 171.) The trial court then found Robinson guilty of Count 1, rape (vaginal), and Count 3, kidnapping with a sexual motivation specification. The court sentenced him to three years' incarceration on each count, to be served concurrently.

{¶ 5} After trial, Robinson retained co-counsel. He then filed a motion for new trial, arguing that the evidence was insufficient to support his convictions for rape and kidnapping. Two weeks later, in a supplement to the motion for new trial, Robinson asserted that although he had adamantly maintained at trial that he did not engage in sexual intercourse with the victim, shortly after trial, after counsel

"implore[ed] [him] to reflect on any interactions he may have had with the alleged victim," he "mentioned to counsel that he had made out with the alleged victim and they had 'fooled around,' or touched one another in a sexual manner, while in the car after work a couple times." Robinson claimed that he only now remembered this fact because he is a "disabled veteran" and was diagnosed in the past with a "traumatic brain injury" ("TBI"). Upon learning about Robinson's TBI, counsel requested further information about the condition, and Robinson's wife provided medical records indicating that Robinson's TBI had resulted in "moderate impairment of memory, attention, or concentration; difficulty communicating; and occasional disorientation." Counsel argued that she would have handled the case differently if she had known about Robinson's prior interactions with the victim, and that the new information about Robinson's prior sexual interactions with the victim supported his motion for a new trial because it provided "an explanation for the DNA evidence."[1] The trial court denied Robinson's motion.

{¶ 6} Robinson then appealed his convictions, contending that the trial court erred in denying his pretrial motion to dismiss for preindictment delay, the evidence was insufficient to support his convictions, and his convictions were against the manifest weight of the evidence. This court overruled Robinson's assignments of error and affirmed his convictions. *Robinson*, 8th Dist. Cuyahoga No. 107950, 2019-Ohio-4458, at ¶ 57. This court also denied Robinson's motion for reconsideration.

---

[1] Robinson's trial counsel withdrew after filing the motion for new trial and supplement to the motion.

Robinson then appealed to the Ohio Supreme Court, which declined to accept jurisdiction. *State v. Robinson*, 158 Ohio St.3d 1488, 2020-Ohio-1634, 143 N.E.3d 533.

{¶ 7} While his appeal was pending in the Ohio Supreme Court, Robinson filed a petition for postconviction relief that set forth two grounds for relief: (1) ineffective assistance of counsel because counsel failed to advise him of his right to testify; and (2) ineffective assistance of counsel because counsel did not investigate his mental health issues or disabilities prior to trial. Attached to Robinson's petition was his affidavit, in which he averred that he has a TBI resulting from his service in the Army, and the TBI "makes it hard for [him] to remember things and to concentrate." Robinson also averred that counsel did not ask him if he had any disabilities until after trial, or "go over my right to testify with me in detail" and "did not tell me the benefits of testifying."

{¶ 8} The affidavit of trial counsel Allison Hibbard was also attached to Robinson's petition. Hibbard averred that she advised Robinson not to testify at trial. She also averred that shortly after trial, Robinson mentioned that "he had made out with the alleged victim and they had fooled around when he gave her rides home from work." Hillard averred that because she could not understand why Robinson had not disclosed this earlier, she conferred with Robinson's wife of 20 years, who told her that Robinson was a disabled veteran and had a TBI resulting from his time in the military. Hibbard averred that Robinson's wife provided documentation demonstrating that as a result of his disability, Robinson has

"moderate impairment of memory, attention, and concentration; difficulty communicating; and occasional disorientation." Hibbard further averred that at times she had difficulty communicating with Robinson while preparing for trial, which she attributed to the 20-year time lapse, but in retrospect, she should have specifically inquired if he had any mental or intellectual disabilities that were impacting his ability to assist in his defense.

{¶ 9} Also attached to Robinson's petition was a decision from the Department of Veterans Affairs (the "VA"), dated April 24, 2018, indicating that Robinson served in the Army from 1986 to 1989, and filed a new claim for benefits on February 17, 2018, after he was indicted. The decision stated that after evaluation, Robinson's "mild" TBI, which had been considered to be 40 percent disabling, was increased to 100 percent disabling. Robinson's tension headaches were continued at 50 percent disabling, and his tinnitus condition was continued at 10 percent disabling. His claim for a service connection to dizziness was denied.

{¶ 10} The trial court denied Robinson's petition for postconviction relief without a hearing. With respect to Robinson's claim that counsel was ineffective for not advising him of his right to testify, the trial court found that both affidavits were insufficient to establish the claim: counsel's affidavit did not state that she failed to advise Robinson of his right to testify, and Robinson's affidavit stated only that counsel "did not tell me the benefits of testifying." The court also found that Robinson's affidavit did not state what he would have testified to, or even that he had a consensual sexual relationship with the victim.

{¶ 11} Further, the trial court found there was nothing in the record to demonstrate that the result of the trial would have been different if Robinson had testified. Specifically, the court noted that Robinson was "adamant" at trial that he did not have a sexual relationship with the victim, and only remembered the alleged sexual consensual encounters *after* trial, after the trial court stated that reaching a verdict would have been a more difficult decision if the defense had argued there was consensual sexual activity, and after counsel "implore[d]" him to think about how his DNA could have been found on the victim's pubic hair. The court concluded that because Robinson only remembered the alleged sexual encounters after trial, it was mere speculation as to how he would have testified at trial or explained the DNA evidence, and speculation as to how a witness might have testified or how such testimony would have affected the outcome of the trial is insufficient to establish a claim of ineffective assistance of counsel.

{¶ 12} With respect to Robinson's claim that counsel was ineffective for not investigating his mental health issues or disabilities prior to trial, the trial court found that Robinson's new counsel, "who was joined by additional new counsel on appeal," knew about Robinson's TBI by the time of sentencing, and thus any claim about counsel's alleged ineffectiveness for failing to investigate the TBI could have been raised on direct appeal. Accordingly, the court found that the claim was barred by the doctrine of res judicata.

{¶ 13} Furthermore, the trial court found there was nothing in the record demonstrating that trial counsel should have known about or investigated

Robinson's mental health issues prior to trial. The court concluded that, in fact, the record demonstrated "the opposite." The court found that by counsel's own admission, she and Robinson engaged in "extensive discussions" in preparation for trial, and he adamantly maintained that he did not engage in sexual intercourse with the victim. Counsel further acknowledged that it was only after trial, after she "implore[d]" him to reflect, that Robinson stated he had prior consensual activity with the victim. The trial court noted further that in trial counsel's affidavit in support of Robinson's petition for postconviction relief, counsel stated that she "could not understand why he had not disclosed this sooner" and she "had no idea he had a disability." The trial court also found that the trial transcript demonstrated that after the claimed incident that gave rise to his disability, "Robinson was able to go to college, get his degree, and become an IT specialist."

{¶ 14} In addition to finding that the record contained nothing demonstrating that counsel should have known about or investigated Robinson's TBI, the trial court found that it was speculative as to how knowledge of Robinson's TBI diagnosis would have changed the outcome of the motion to dismiss for preindictment delay, the trial, or the motion for new trial. The court noted that the documentation from the VA referenced only a "mild" TBI, and the only mention of memory issues in the record appeared in Robinson's and trial counsel's affidavits, both of which were unsupported by any documentation the court could review. Specifically, there was no documentation regarding what the symptoms of mild TBI are, whether such symptoms include memory loss, or how Robinson's TBI affected

him. Further, the court found that even if Robinson's memory loss as alleged in the petition were true, there was no evidence regarding what type of memory loss Robinson allegedly suffered (e.g., short term, long term, traumatic incident specific) and how such memory loss affected the outcome of the case. The court found that Robinson had provided only unsupported allegations of memory loss and speculation as to how the alleged memory loss would have affected the outcome of the case. Accordingly, the court found that Robinson's claim of ineffective assistance of counsel lacked merit and denied his petition. This appeal followed.

## II. Law and Analysis

### A. Standard of Review

{¶ 15} A petition for postconviction relief is a collateral civil attack on a criminal judgment, not an appeal of the judgment. *State v. Lenard*, 8th Dist. Cuyahoga No. 108646, 2020-Ohio-1502, ¶ 8, citing *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). To prevail on a petition for postconviction relief, a defendant must establish a violation of his constitutional rights that renders the judgment of conviction void or voidable. R.C. 2953.21.

{¶ 16} It is well settled that a hearing is not automatically required whenever a petition for postconviction relief is filed. *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). Rather, in considering a petition for postconviction relief, a trial court acts as a gatekeeper in determining whether a defendant will receive a hearing. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51. A trial court may dismiss a petition for postconviction relief without a hearing

"where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus.

{¶ 17} With respect to the trial court's conclusion that Robinson's ineffective assistance of counsel claim for failing to investigate his TBI was barred by res judicata, we note that "'[t]he most significant restriction on Ohio's statutory procedure for postconviction relief is that the doctrine of res judicata requires that the claim presented in support of the petition represent error supported by evidence outside the record generated by the direct criminal proceedings.'" *Lenard* at ¶ 10, quoting *State v. Monroe*, 10th Dist. Franklin No. 04AP-658, 2005-Ohio-5242, ¶ 9.

{¶ 18} Under the doctrine of res judicata, constitutional issues cannot be considered in postconviction proceedings brought pursuant to R.C. 2953.21 where they have already or could have been fully litigated by the defendant, either before the judgment of conviction or on direct appeal from that judgment. *State v. Stedman*, 8th Dist. Cuyahoga No. 83531, 2004-Ohio-3298, ¶ 17, citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph seven of the syllabus. Issues properly raised in a petition for postconviction relief are those that could not have been raised on direct appeal because the evidence supporting such issues is outside the record. *Stedman* at *id.*, citing *State v. Milanovich*, 42 Ohio St.2d 46, 50, 325 N.E.2d 540 (1975). If an issue has, or should have been, raised on direct appeal, the trial court may dismiss the petition on the basis of res judicata. *Stedman* at *id.*,

citing *State v. Spisak*, 8th Dist. Cuyahoga No. 67229, 1995 Ohio App. LEXIS 1567 (Apr. 13, 1995).

{¶ 19} We review the trial court's denial of Robinson's petition for an abuse of discretion. *Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶ 52. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Id.* at ¶ 16, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

### B. Claim 1 – Ineffective Assistance of Counsel for Failing to Advise Robinson of His Right to Testify

{¶ 20} Robinson's first claim in his petition for postconviction relief was ineffective assistance of counsel due to trial counsel's failure to advise him of his right to testify. Although Robinson acknowledges in his appellate brief that he raised this claim in his petition, he makes no argument on appeal that the trial court erred in denying this claim without a hearing. Accordingly, he has waived any argument regarding this claim and we need not consider it.

### C. Claim 2 – Ineffective Assistance of Counsel for Not Adequately Investigating Robinson's Mental Health Issues

{¶ 21} In his second claim for relief, Robinson asserted that trial counsel was ineffective for not fully investigating his mental health issues. On appeal, Robinson contends that the trial court erred in denying this claim without a hearing because he "presented enough evidence in his petition to warrant an evidentiary hearing where the effect of his traumatic brain injury could have been explored." Appellant's brief, p. 9.

{¶ 22} As discussed above, the trial court denied this claim (1) on the basis of res judicata; (2) because there was no evidence demonstrating that counsel should have known about Robinson's disability or determined prior to trial that a mental health investigation was necessary, and (3) even if counsel had known about the TBI, Robinson failed to provide sufficient documentation demonstrating that knowledge of his TBI diagnosis would have changed the outcome of the trial court proceedings. We agree with the trial court's reasoning.

{¶ 23} Although Robinson contends that the trial court erred in denying his petition on the basis of res judicata because "the evidence submitted in support of the petition, specifically the affidavits, was outside the record," appellant's brief, p. 7, it is apparent that all of the information regarding Robinson's TBI and counsel's failure to investigate his mental health issues prior to trial was contained in the trial court record.

{¶ 24} Specifically, the supplement to Robinson's motion for new trial asserted that (1) Robinson and counsel had engaged in extensive discussions prior to trial during which Robinson adamantly maintained that he did not engage in sexual intercourse with the victim; (2) shortly after trial, after counsel "again implore[d]" Robinson to reflect on any interactions with the victim, Robinson told counsel that he had made out with the victim and they had touched one another in a sexual manner; (3) Robinson then disclosed that he was a disabled veteran; (4) prior to this disclosure, "counsel was wholly unaware that defendant had a disability"; (5) counsel then spoke with Robinson's wife of 20 years, who disclosed

that Robinson had been diagnosed with a TBI and provided documentation indicating that his TBI had resulted in moderate impairment of memory, attention or concentration, difficulty communicating, and occasional disorientation; and (6) Robinson's failure to relay relevant details about the case and material to his defense was a result of his TBI.

{¶ 25} Robinson's and trial counsel's affidavits added nothing new. Robinson's affidavit averred that he is a disabled veteran and has a TBI — facts contained in the record. Trial counsel's affidavit set forth the very same allegations as those contained in the supplement to the motion for new trial. Accordingly, because the information about Robinson's TBI and counsel's failure to investigate his mental health issues prior to trial was contained in the trial court record, Robinson could have raised any argument regarding counsel's alleged ineffectiveness for failing to investigate his mental health issues on direct appeal. Because he did not do so, the claim is now barred by the doctrine of res judicata and the trial court did not abuse its discretion in dismissing the claim on this basis.

{¶ 26} Furthermore, even if the claim was not barred by res judicata, the trial court did not err in dismissing the claim without a hearing. As the trial court found, the record reflects there was no reason counsel should have known about or investigated Robinson's mental health issues prior to trial. The record demonstrates that Robinson was able to appropriately assist with his defense; he and trial counsel engaged in many pretrial discussions; and Robinson adamantly denied that he had

engaged in sexual intercourse with the victim. In light of this pretrial preparation, as counsel admitted, there was no reason to suspect that Robinson had a disability.

{¶ 27} Likewise, as the trial court found, the petition for postconviction relief contained no evidence demonstrating that knowledge of Robinson's TBI would have changed the outcome of the trial court proceedings. Although Robinson averred that his TBI "makes it hard" for him to remember things, and although trial counsel averred that Robinson's TBI resulted in some impairment of his memory, there was no evidence to support these assertions. Specifically, there was no evidence demonstrating what type of memory loss Robinson suffered, nor any evidence demonstrating how the alleged memory loss affected Robinson's memory of the incident that gave rise to the charges in this case. The VA decision indicated that Robinson suffered from a "mild" TBI, and although the decision indicated this disability was increased from 40 percent to 100 percent disabling, it gave no explanation regarding the facts upon which it relied to reach this conclusion and did not conclude that Robinson's TBI had resulted in memory loss. Thus, to the extent Robinson was disabled, the VA decision offered nothing demonstrating how his disability affected the outcome of the case. As the trial court found, Robinson's assertions that his memory issues affected the outcome of the case were both unsupported and speculative.

{¶ 28} Furthermore, Robinson's claim that he could not remember the details of the incident involving the victim because of his TBI is belied by the record. In fact, Robinson remembered many details about the victim and their relationship.

In his statement to the police, Robinson remembered the victim by name and that he had worked with her at the Cleveland Convention Center for some time. (Tr. 141.) And as stated by defense counsel in opening statement, Robinson remembered the victim from work, remembered having a friendly relationship with her, remembered talking to her about her children, and remembered that he "possibly gave her a ride at one point or another." (Tr. 21-22.) Curiously, although Robinson denied at trial that he had sexual intercourse with the victim, he suddenly remembered after trial — after the trial judge stated that the decision to convict would have been more difficult if Robinson had argued he had consensual sex with the victim — that he had engaged in prior consensual sexual activity with the victim. Robinson apparently remembers the details of his relationship with the victim quite well, although his memory appears to be selective and self-serving.

{¶ 29} When a defendant asserts a claim of ineffective assistance of counsel in a petition for postconviction relief, the defendant bears the initial burden of submitting evidentiary documents containing sufficient operative facts to demonstrate his counsel's ineffectiveness and the fact that he was prejudiced thereby. *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus. If a petitioner fails to meet this burden, the trial court may dismiss the petition for postconviction relief without a hearing. *Id.*

{¶ 30} Robinson failed to produce evidence demonstrating that counsel should have known about or investigated his TBI prior to trial, or evidence demonstrating that he was prejudiced by counsel's failure to do so. Accordingly, the

trial court properly dismissed this claim without an evidentiary hearing. The assignment of error is therefore overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., P.J., and
MICHELLE J. SHEEHAN, J., CONCUR